CLARENCE W. LEIBBRANDT ET AL., APPELLANTS, MANUEL RUF ET
AL., APPELLEES, V. LEAH LOMAX ET AL., APPELLEES.
CLARENCE W. LEIBBRANDT ET AL., APPELLANTS, V. LEAH LOMAX
ET AL., APPELLEES.

423 N.W.2d 453

Filed May 20, 1988.   Nos. 86-191, 86-192.

W. Wesley Lubberstedt, P.C., for appellants.

Marvin O. Kieckhafer of Kay and Kay, for appellees Lomax et al.

John R. Higgins, Jr., of Paine, Huston, Higgins & Martin, for appellees Raymond C. Haag et al.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

In consolidated cases, appellants challenge the existence of a new Class II school district created by merger and reorganization of two Class II districts—School District No. 001 of Furnas County (Wilsonville) and School District No. 11 of Red Willow County (Beaver Valley).

Apparently in response to a request by voters of the school district, in the fall of 1983 the Beaver Valley board of education unanimously signed a petition to change that school district's boundaries by merger with Wilsonville, another Class II school

district, resulting in a new Class II school district. The merger petition, signed by the Beaver Valley board, was presented to the Wilsonville board of education at its special meeting on November 29, 1983. The Wilsonville board of education unanimously signed that petition for creation of the new Wilsonville-Beaver Valley Class II school district.

Regarding creation of a school district from existing districts, Neb. Rev. Stat. § 79-402 (Reissue 1981) provides:

The county superintendent shall create a new district from other districts, or change the boundaries of any district upon petitions signed by sixty per cent of the legal voters of each district affected; *Provided*, that petitions must contain signatures of at least sixty-five per cent of the legal voters of each district affected if the proposed change has been disapproved by both the state and county committees for school district reorganization; *and provided further*, that when area is added to a Class VI school district, or when a Class I school district, which is entirely within a Class VI school district, is taken from a Class VI school district, the Class VI district will be deemed to be an affected district. Petitions proposing to create a new school district or to change the boundary lines of existing school districts shall, when signed by at least sixty per cent of the legal voters in each district affected, be submitted to the county committee for school district reorganization. The county committee shall, within forty days, review and approve or disapprove such proposal and submit it to the state committee for school district reorganization. The state committee shall, within forty days, review and approve or disapprove the proposal and return it, with any recommendations deemed advisable, to the county committee. The county committee shall, within fifteen days of receipt of the returned proposal, consider the action of the state committee, and determine whether to give final approval or disapproval to the proposal. The county committee shall also, within fifteen days of receipt of the returned proposal, advertise and hold a public hearing at which the recommendations and action of the state and county

committees shall be presented to the legal voters in attendance. The county committee shall hold the petitions for ten days following the hearing, at the end of which time the committee shall file the petitions with the county superintendent. The county superintendent shall, within fifteen days, advertise and hold a hearing to determine the validity and sufficiency of the petitions. Upon determination, as a result of the hearing, that sufficient valid signatures are contained in the respective petitions, the county superintendent shall proceed to effect the changes in district boundary lines as set forth in the petitions; *Provided*, that any person adversely affected by the changes made by the county superintendent may appeal to the district court of any county in which the real estate, or any part thereof, involved in the dispute is located. If the real estate is located in more than one county, the court in which an appeal is first perfected shall obtain jurisdiction to the exclusion of any subsequent appeal. A signing petitioner shall be permitted to withdraw his name therefrom and a legal voter shall be permitted to add his name thereto at any time prior to the end of the ten-day period when the county committee files such petitions with the county superintendent. Additions and withdrawals of signatures shall be by notarized affidavit filed with the county superintendent.

Neb. Rev. Stat. § 79-402.03 (Reissue 1987) provides:

In addition to the petitions of legal voters pursuant to section 79-402, changes in boundaries or the creation of a new district from other districts may be initiated and accepted by:

(1) The board of education of any Class III, IV, V, or VI district; and

(2) The board of education of any Class I or II district in which is located a city or incorporated village.

Neb. Rev. Stat. § 79-402.06 (Reissue 1981) states: "Petitions presented pursuant to sections 79-402.03 to 79-402.05 shall be subject to the same requirements for content, hearings, notice, review, and appeal as petitions submitted pursuant to section 79-402."

Pursuant to § 79-402, the Wilsonville-Beaver Valley petition was submitted to the county reorganization committee in Furnas County for Wilsonville and in Red Willow County for Beaver Valley. Because the proposed merger involved school districts in two counties, a special reorganization committee was necessary. See Neb. Rev. Stat. § 79-426.09(2) (Reissue 1987).

The Furnas County committee published notice that its meeting would be held on December 20, 1983, to select three of its members for the special reorganization committee, but inclement weather prevented the meeting of the Furnas County committee. Faced with the 40-day limit for approval or disapproval of the reorganization plan, see § 79-402, without a formal meeting, the chairman of the Furnas County committee appointed members from that committee to serve on the intercounty special reorganization committee. On December 23, the Furnas County committee approved and confirmed the chairman's appointments to the intercounty special reorganization committee. After published notice, the Furnas-Red Willow special reorganization committee met on January 5, 1984, and approved the Wilsonville-Beaver Valley plan for merger and reorganization contained in the petition. The special committee then submitted the petition to the state committee for approval. On February 17, the state committee disapproved the petition and returned it to the special committee, which, on March 6 by a "show of hands" vote rather than a roll call vote, disapproved the Wilsonville-Beaver Valley petition. However, as required by § 79-402, the special committee held a hearing on March 6 and later, in further compliance with § 79-402, filed the petition with the county superintendents in Furnas County and Red Willow County.

On March 14, appellants commenced an action in the district court for Furnas County, case No. 86-191 in these consolidated appeals, and sought an injunction to prevent further action on the reorganization petition. On May 3, the court denied injunctive relief to the appellants.

The county superintendents met on May 10 to consider the Wilsonville-Beaver Valley petition, verified the validity of signatures on that petition, and changed the school districts'

boundaries in accordance with the Wilsonville-Beaver Valley petition, thereby creating the new Class II district in question. Appellants appealed from the superintendents' May 10 action and requested that the district court "stay" any further reorganization proceedings during the pendency of their appeal (case No. 86-192). Before any action was taken by the district court, the special reorganization committee, pursuant to Neb. Rev. Stat. § 79-402.09 (Reissue 1987), appointed a board of education for the new Class II district. On July 30, the district court entered an order which stayed any further proceedings by the county superintendents and the county committees during pendency of appellants' appeal in the district court. In each case in the district court, all parties interested in upholding the new district's existence filed a motion for summary judgment. The district court entered summary judgment, affirming the county superintendents' action, which resulted in the new Wilsonville-Beaver Valley Class II school district. In granting the summary judgment, the district court found: "[The] Reorganization Committees violated the Open Meetings Laws in more than one particular, but the actions of the Committees were advisory only and not determinative of the validity of the Petition to change the boundary lines. This determination was the sole responsibility of the County Superintendents."

Appellants contend that the Furnas County reorganization committee and the intercounty special reorganization committee failed to comply with the Nebraska "Public Meetings Laws," Neb. Rev. Stat. §§ 84-1408 to 84-1414 (Reissue 1981 & Cum. Supp. 1984). In particular, appellants question two committee meetings or, more precisely, question the Furnas County committee's action in December 1983 without a formal meeting and the "show of hands vote" at the special reorganization committee's meeting on March 6. Appellants point to § 84-1413(2) (Reissue 1981) of the Nebraska Public Meetings Laws, which in part provides: "Any action taken on any question or motion duly moved and seconded shall be by roll call vote of the public body in open session, and the record shall state how each member voted, or if the member was absent or not voting."

Appellants then rely on § 84-1414 (Cum. Supp. 1984), which

in part provides: "Any motion, resolution, rule, regulation, ordinance, or formal action of a public body made or taken in violation of the provisions of [the Nebraska Public Meetings Laws] shall be declared void by the district court . . . ."

Why the appellants, who oppose the reorganized Wilsonville-Beaver Valley school district, want to nullify the special reorganization committee's disapproval of the reorganization is unexplained, but becomes unimportant under the circumstances.

Action taken in violation of the Nebraska Public Meetings Laws is subject to nullification by a district court under § 84-1414. *Grein v. Board of Education*, 216 Neb. 158, 343 N.W.2d 718 (1984).

However, in the present appeals, the Nebraska Public Meetings Laws have no bearing on the disposition compelled by the statutes governing merger and reorganization of Class II school districts.

Appellants raise no question concerning the correctness of action by the school boards in signing the petition for merger and reorganization of the Wilsonville-Beaver Valley school districts. Further, appellants do not challenge the action taken by the county superintendents, who changed the school districts' boundaries in accordance with the petition for merger and reorganization.

Sections 79-402 and 79-402.03 provide alternative methods for creation of a new school district from existing school districts. By § 79-402, a school district's legal voters may petition for a change of the district's boundaries. By § 79-402.03, a school district's board of education may initiate or accept a proposed change of a district's boundaries or the creation of a new district by merger of existing districts. Action under § 79-402.03 may be characterized as a board-to-board petition for a change of a school district's boundaries or merger of existing school districts. The board-to-board petition is as efficacious as a petition by a school district's legal voters to effect a school district's boundary change or merger involving another district. In the appeals now before us, the board-to-board petition was utilized rather than a petition by the legal voters of the respective school districts. As far as a

petition's content, hearings, notice, review, and any appeal concern a board-to-board petition, the provisions of § 79-402 apply. See § 79-402.06. As previously mentioned, appellants do not complain that any board of education or county superintendent failed to comply with the provisions of § 79-402.

In *Moser v. Turner*, 180 Neb. 635, 144 N.W.2d 192 (1966), this court expressed the roles and functions of a county or state reorganization committee in relation to a county superintendent acting under § 79-402:

> Apparently the provisions for review of the action of the county superintendent by the county and state committees stemmed in part from the desire to keep them informed of the changes being made by the electors by the petition method. Certainly under section 79-402, R.S. Supp., 1965, it was not intended thereby to divest the authority of the county superintendent under the petition method. The office of the reorganization committees in proceedings to change the school districts before the county superintendents is shown in Lindgren v. School Dist. of Bridgeport, 170 Neb. 279, 102 N.W.2d 599, where this court said: "It is contended that the proceedings are void in that the state committee on reorganization did not have its report before the county committee on reorganization at the time it held its hearing on the proposal to transfer the lands in question. Such report was filed with the county superintendent when the hearing was held to determine the sufficiency of the petitions. We point out that the consideration of the proposal to transfer lands by the state and county committees is advisory only. Such committees have no part in determining whether or not the transfer shall be made other than to make recommendations thereon. . . ."

*Id*. at 643, 144 N.W.2d at 197.

Although the special reorganization committee at the county level and the state reorganization committee rejected the Wilsonville-Beaver Valley petition and reorganization plan, any action by those reorganization committees was only "advisory." *Moser v. Turner, supra*. Whether the county or state

reorganization committee has approved or disapproved a petition, § 79-402 requires that the county committee, and the intercounty special reorganization committee in the present appeals, must consider the state committee's action and determine whether to approve or disapprove the reorganization plan set out in the petition. After a public hearing and elapse of 10 days, § 79-402 further requires that the county committee must file the reorganization petition with the county superintendent, who then holds a hearing to determine the validity and sufficiency of the petition. Thus, as reflected in § 79-402, rejection or disapproval by a county or state reorganization committee is immaterial to eventual submission of a petition to the county superintendent for disposition.

When the county superintendent has determined that the reorganization petition has "sufficient valid signatures," the superintendent's duty to carry out the petitioned reorganization is mandatory under § 79-402. This court, in *Eriksen v. Ray*, 212 Neb. 8, 12, 321 N.W.2d 59, 62 (1982), observed:

> Under the petition method, once a sufficient number of legal voters of each district have signed a petition, the superintendent must then act in accordance with the statute. See Neb. Rev. Stat. § 79-402 (Reissue 1976). Under the petition form of reorganization, the provisions of the statutes are mandatory and jurisdictional and the failure to comply with the requirements set out in the statutes generally causes the action taken by the county superintendent to be void. See *State ex rel. Larson v. Morrison*, 155 Neb. 309, 51 N.W.2d 626 (1952). Likewise, where proper petitions are filed, it is the mandatory duty of the superintendent to hold a hearing and, if the petitions are sufficient, to change the boundaries as requested. See *School Dist. No. 49 v. Kreidler*, 165 Neb. 761, 87 N.W.2d 429 (1958).

See, also, *Olsen v. Grosshans*, 160 Neb. 543, 71 N.W.2d 90 (1955); *Cacek v. Munson*, 160 Neb. 187, 69 N.W.2d 692 (1955).

Under the circumstances, when the county superintendents determined that the Wilsonville-Beaver Valley reorganization petition had "sufficient valid signatures," the superintendents were statutorily obligated to carry out the reorganization plan

in accordance with the petition submitted by the school districts. See *School Dist. No. 49 v. Kreidler*, 165 Neb. 761, 777, 87 N.W.2d 429, 439 (1958): regarding school districts to be reorganized under § 79-402 but located in different counties, "superintendents, acting multilaterally and not unilaterally, have jurisdiction and the mandatory duty to order the changes requested" by a petition for change in boundaries or merger of the school districts.

What this court has stated in *Eriksen v. Ray, supra*, concerning a petition by a school district's legal voters is equally applicable to a petition by a school district's board of education pursuant to § 79-402.03, as the provisions applicable to that statute existed when the county superintendents acted on the Wilsonville-Beaver Valley petition.

We note the provisions of § 79-402.06 (Reissue 1987):

Petitions presented pursuant to sections 79-402.03 to 79-402.05 shall be subject to the same requirements for content, hearings, notice, review, and appeal as petitions submitted pursuant to section 79-402, except that a petition presented pursuant to section 79-402.03 shall not become effective unless it is approved by a vote of a majority of the members of the state committee for school district reorganization. If such petition is not approved, the final hearing by the county committee for school district reorganization and the county superintendent shall not be held. Any person adversely affected by the disapproval shall have the right of appeal under section 79-402.

Section 79-402.06 (Reissue 1987) became effective on July 10, 1984, that is, after the county superintendents' action from which the appellants have appealed to the district court and this court.

The district court correctly granted summary judgments to the appellees because, on the material submitted to the district court, there was no genuine issue as to any material fact and appellees were entitled to judgments as a matter of law. See, Neb. Rev. Stat. § 25-1332 (Reissue 1985) (summary judgment); *Krul v. Harless*, 222 Neb. 313, 383 N.W.2d 744 (1986).

Appellants' claim for an attorney fee allowable under the

Nebraska Public Meetings Laws, see § 84-1414, is obviously without merit in view of the inapplicability of the Nebraska Public Meetings Laws under the circumstances.

AFFIRMED.